At this time, I would like to call to order the provisions now in session of the Honorable Justice Frank M. W. Mitchell v. Presidio. Please be seated. Okay, our next case is Contreras v. Board of Education. And if our counsel could just step up to the lectern briefly. We've allocated 20 minutes aside with 5 minutes rebuttal. If you could identify yourselves for the record. Good morning, Your Honor. It's Josiah Gauth here for Alfredo Contreras. Good morning, Your Honor. I'm Thomas Doyle for the Board of Education. Great. Well, as I said earlier this morning, we'll undoubtedly interrupt you with questions. We've read the briefs. We're familiar with the record and the authority cited therein. And with that, we'll get started. So, Mr. Gauth, whenever you're ready. All right. Good morning, Your Honors. As I said, my name is Josiah Gauth. I'm the attorney for Alfredo Contreras. Counselor, could you pull the mic a little closer because we have the air conditioning back here? I'd be glad to. But it also doesn't amplify you, so you have to keep your voice down. I'm getting over a bit of a cold, but I will do my best. All right. So, it sounds like you're familiar with the factual background of this case. Mr. Contreras is a tenured teacher in Chicago Public Schools or was until his dismissal. That's what we're here to challenge today. The Tenured Teacher Dismissal Act provides for a hearing officer hearing to establish a factual record. The hearing officer makes a recommendation about dismissal or not dismissal. Here, the hearing officer recommended against dismissal, but the school board did not accept that recommendation. Instead, dismissed Mr. Contreras. He has the right as a tenured teacher under the school code to file a petition for administrative review directly to this court. That's what he did. That's why we're here today. How unusual is that, if you know? I don't know if I can answer that question. I do not know. Okay. I will say that it's more common in situations like this one where the hearing officer recommended against dismissal, recommended that Mr. Contreras be reinstated or retained, I guess, at that point. And the remedial action. Right, right. And then the board did not accept that recommendation. Let me start, because I think we should, with the Illinois Supreme Court case of Bags v. Murfreesboro, which I think you said you're familiar with. This analysis under that case provides for a two-step process. It's summarized in paragraph 63 of the opinion there. And the first step of that analysis requires looking at what the school board says that the teacher did wrong and then looking whether the manifest weight of the evidence from the hearing officer hearing supports the school board's conclusion about what the teacher supposedly did wrong. And, in fact, in that very Bags decision, the Supreme Court rejected some specific factual findings that the school board had relied on. The one thing that the school board had relied on was that the teacher had arrived late to work. Well, the Supreme Court found that that was not supported by the manifest weight of the evidence as misconduct because the teacher had asked for permission and received permission to arrive late to work instead of simply taking the whole day off. So there was not support in the record for a conclusion that that was misconduct. So the first step is to go through all of the bases for misconduct that the school board relied on and screen out those which aren't supported by the record established at the hearing before the hearing officer. And then once that's done, that takes a second step. The second step is to look at the instances of misconduct that are supported by the factual record and to analyze whether the school board was correct to determine that those warrant dismissal. The Supreme Court in Beggs made a decision at this step as well. It concluded that, in fact, there was evidence that the geometry class that Teacher Beggs was teaching was behind schedule on the syllabus. But the Supreme Court concluded that that, standing alone, would not warrant dismissal and the school board was wrong to determine that it did warrant dismissal. So even though it was true that that happened, it was unreasonable and not related to service as a teacher to dismiss a teacher for being a little bit behind on the schedule for teaching geometry. And I think that that same two-step analysis, well, it's important because it's required by Beggs, right? But I think it also is something that the court should undertake here because I think that there are some allegations that should be screened out at the first step because they're not supported by factual evidence, by the manifest way to the evidence from the hearing. There are some things that the school board relied on that are supported by the manifest way to the evidence, including admissions for Mr. Contreras. He said at the hearing, yeah, that happened. All right, but when you look at what's left after you screen out what doesn't have factual support, it doesn't justify dismissal. What do you do with the allegations that weren't consistent with the written charges? Yes. So I think that those are not supported by the manifest way to the evidence initially. So I think I have two responses to that, and that's the first one. But you asked about what I have as my second one, which is things that a student witness said that weren't in the charges. So that's allegations that Mr. Contreras stared at female students. That's the one that stands out as something that was not part of the charges. That's right. So it's not, right? And I think everyone agrees with that because we can see what the charges are. What I think is important here and what I think the school board's brief gets wrong is that this is not about the bare minimum of due process. This is about what the school code requires. So the school board says, well, it's okay that we didn't put that in the charges because there were two hearing dates, and that student testified on the first date, and the next hearing date was a bit later, and so Mr. Contreras had the intervening time to think about his response to that. But that's not correct. That's not correct because the school code says that the charges must be in writing. And what does must mean but must? You know, there's sometimes a debate in the case law about what the word shall means and whether that's a strict requirement that the case law is clear, and I've cited cases in my brief to that effect, that where the statute uses the word must, that that's strict. And the school board didn't do that. You know, they say that the delay allowed Mr. Contreras to prepare a response. Well, it also allowed them to amend the charges. They didn't do that. So I think that the court needs to apply the statute, of course, right? That's what the court does. So I was going to go through the specific allegations and how I see them as fitting into the two-part BEGS analysis, but let me say first that the board seems to argue that the BEGS analysis shouldn't apply to a Chicago teacher, shouldn't apply to a teacher who's accused of what the board says is per se irremediable misconduct. You know, I just don't think there's support in the case law for that. I think the case law is contrary to that. If you look at page three of my reply brief, and I can tell you the case is right here, this court has repeatedly cited to the BEGS decision in analyzing dismissal cases by Chicago teachers. So I think that the two-step analysis that comes from BEGS should be applied to Chicago teachers. I think that the fact that things like immoral conduct are defined as immediately justifying termination for Chicago teachers, that should come into play at the second step of the BEGS analysis, whether the conduct, in fact, justifies termination. If it's immoral, okay. If it's factually supported on the record and the record shows immoral conduct, okay, there you go. You've got justification for termination. That's where that properly comes into play. It doesn't excuse this court from applying the BEGS analysis, which this court has done in other cases, of course. All right. So let's look at the two allegations that I think should be screened out at the first step of the BEGS analysis because there's not factual support in the record. The first allegation that fails at this step is that Mr. Contreras paid excessive attention to a student I'll call N.S. So Mr. Contreras denies this. He denied it on the record. His testimony was the only first-person non-hearsay testimony about whether he did this. Student N.S. did not testify. The board did not call student N.S. to testify. So the board relies on a few inferences and, in some cases, double hearsay. It relied on inference from the school's principal that N.S. sought to transfer classes, to move away from Mr. Contreras. But that's speculation, that that was her reasoning. I don't think that the manifest way of the evidence shows that, especially when Mr. Contreras expressly denied that he had paid special attention to her. The board relies on testimony of its Title IX administrator, Cammie Pratt. If you read the transcript, Pratt is not testifying about what Mr. Contreras' relationship to N.S. was. Pratt is testifying that if this had happened, it would violate the board's policies as a general matter. So that testimony really has nothing to do with Mr. Contreras and his case. The board relies on its investigation report. I mentioned double hearsay. This is the double hearsay. The board didn't call the investigator to say, yeah, N.S. told me. If they had, that would be hearsay. What the board did is submit the investigation report, which is double hearsay, because the person who wrote the report can't even be cross-examined about the hearsay about what N.S. said. So that's what the board has to support this. And I think that that is against the manifest way of the evidence. And, in fact, there's a 2014 case from this court, Kimball v. Illinois State Board of Education, also involving a Chicago teacher that I've cited and discussed in my brief, and I think I'm highlighting it right now because I think it's the most important case on this. So that involved allegations of choking a student, obviously incredibly serious, right? But there, as here, the school board did not bring evidence to the hearing before the hearing officer that backed up that allegation. And there, as here, the teacher flatly denied the allegation. What the board did bring and what the board relied on to dismiss was other employees who inferred that the choking had occurred from the student moving quickly or having a wrinkled shirt. The student didn't testify. I think that's directly parallel to what we have here. We don't have testimony from the student. The board didn't call the student to testify, didn't allow cross-examination of the student, and instead relied on other people's inferences and hearsay. I think the same results should pertain here. Now, the board has cited a case called Booker and a case called Abramson, saying that in administrative proceedings versus court proceedings, hearsay can be admissible. But both of those cases make it clear that hearsay can be considered where there is also non-hearsay evidence of the same fact, which is not the case here. There is only hearsay and inference as to how Mr. Contreras interacted with student NS. That Booker case, Abramson is not a teacher case. The Booker case is a teacher case. If you read the Booker case, you'll see that the board there correctly, as it could have done here, called the students to testify. All right, so that's that one allegation that I think should be screened out because it lacks support from the manifest way of the evidence. Let me move to the second allegation that I think should be screened out at the first step of the BEGS analysis. This is the testimony from student LD that Mr. Contreras paid excessive attention to female students, including staring at their breasts. And I addressed this just a moment ago. So I won't go into detail, but, again, this lacks evidentiary support. Mr. Contreras denied it. I'm going to read for you from the transcript exactly what student LD testified to because I think it's really important. This is on page 17 of the appendix. This is what student LD said. He was staring at certain areas like my boobs. Well, not necessarily mine. You know, you would just see, I would see it everywhere. Like, I would see other girls too. The looks going to the other girls. So that's the quote. So as you can see, no specific times, no specific names. LD adjudicates on whether she herself was subject to this staring. Now, in contrast, we have clear testimony in the record from Mr. Contreras that he did not do this. So I don't think that that is sufficient under the manifest way to the evidence standpoint. Actually, I don't think the school board's opinion says that it is. The board wrote on page 6 of its decision that the evidence at the hearing was less than clear. So I think they admit that there's not clear evidence about the staring. It says that the board is seriously concerned about the allegation. Frankly, I take that to be an admission that the board is making a decision on what the allegations are and its feelings about the allegations. It's a serious concern for the allegations. But Mr. Contreras is a tenured teacher. He's entitled to a hearing. He's entitled to be dismissed only when evidence proves the allegation. Counsel? Yes. Couldn't it be that the board is seriously concerned about the welfare of the students? It's a novel idea, but they have a lot of young ladies attending public schools. I'm sure they are concerned, and they're rightly concerned. I think all good people are concerned. The issue here is that I think that the board's statement in that section of its decision to dismiss Mr. Contreras acknowledges that there is not clear evidence, there is not manifest way to the evidence for this allegation. And I think that it highlights the board's approach to this, which is to lump everything together to assume that the allegations are true without looking, as this court should, to the record facts. And maybe I should have put this first. As we addressed before, the language of must. The board, I don't know that we even need to get to the question of manifest way to the evidence because the school code requires that the board put allegations in writing. The board must do that. The board didn't do that. You know, and I want to add one more thing in that connection. The board says, oh, well, there were these two hearing dates, so there's the gap in between. But the provisions for procedure for identification of witnesses for tenure teacher dismissal cases require advanced identification of witnesses. So it is prejudicial to add allegations mid-hearing without allowing the teacher to identify witnesses and evidence in advance. All right. So for those reasons, the most significant of the charges against Mr. Contreras simply lacks support from the manifest way to the evidence. A school board's decision to terminate a tenure teacher must be based on facts in the record. From the hearing officer, as the court in Beggs put it, Supreme Court in Beggs put it, the hearing officer, quote, plays a strong role in the process by, quote, making the record for the school board's review. That's in paragraph 60 of the decision. The school board is not allowed to make factual findings outside that record. That's what it did here. And that's why we think its decision should be reversed. All right. So with those allegations screened out because they lack support in the manifest way to the evidence and in one case were not put in writing, I'd like to turn to the allegations the board relies on where there is support in the manifest way of the evidence. The first is that Mr. Contreras admitted telling student N.S., you look better holding the door than me, referring to the classroom door so that other students could come in to the classroom. The hearing officer concluded that this standing alone did not justify termination. I think that's like the Beggs case, right, where, yes, she was a little bit behind in teaching geometry, but that alone would not justify termination. In fact, I don't think that the board disputes that because if you look at their brief, they don't claim that that statement, had it only been that statement, would justify termination. The second is Mr. Contreras' comment about student L.D.'s relationship with her boyfriend, that it wasn't a positive relationship for her. I think the hearing officer's approach here is the correct one. This is actually an appropriate comment from a teacher. This is not inappropriate. And I said in a small case, in page 30 of my opening brief and elsewhere, that the court needs to consider the unique context of the situation. And here, if you look at the transcript, the unique context of the situation is that student L.D. had brought up her boyfriend in class on her own. She had brought up the issues that she was having with him. And in the context of that conversation, which she initiated in front of the whole classroom, Mr. Contreras said, hey, it sounds like that's not a good guy for you. This is exactly what's in the transcript. I'm probably paraphrasing. And I think that the hearing officer's conclusion was that this was appropriate conduct and that the board's contrary conclusion was just unreasonable. The board has argued that Mr. Contreras' conduct was irremediable per se because it fit within the statutory categories for that, which would justify immediate termination. Of course, the school code says what it says. We can all read it, and it does indeed say. I don't understand what it means, though. Cruel, immoral, negligent, and harmful.  Well, I'm confused by the standard. What do you think it means, or what's a case law that tells us what it means? Sure. So we have cases about teachers reporting their work intoxicated. We have—and I'm speaking generally, but I believe the board— Well, if every teacher is probably negligent sometime or another, that doesn't seem extreme or unremediable. Yeah, that's right. And I think the Jackson case that I cited is really the one that we need to look at here. So Jackson, again, was a Chicago teacher from 2016, opinion from this court. So the allegations there were that he had failed to disclose that he had been terminated from prior employment and discharged by the Chicago Police Department. That was one thing that was alleged against him and that had, in fact, occurred. There wasn't a dispute about that. The other was that he delayed in reporting irregularities in testing. The Chicago Board of Education said, well, that's immorality. You lied. You didn't report other people's wrongdoing. But this court correctly concluded, I believe, that the board did not have clear rules about deadlines for reporting testing irregularities. Its application for employment did not directly ask him whether he had been terminated from other jobs. And thus, I think that this court correctly concluded that the school board does not have unilateral, unchecked discretion to decide what conduct fits into those statutory categories. But clearly, flirting with students is something that in every school board would be impermissible. Well, yes, that's right. But that, I think, falls into the first step of the BEGS analysis. I think that had the board called witnesses and provided firsthand testimony, well, that's a little speculative, but we'd certainly be in a different world, right? Right. We don't know what they would have said, but we can imagine easily a different world where the board had proved its allegations for direct testimony from multiple witnesses. But that's not the world we're in. That's not the record that the board built before the hearing officer. So I think the board is wrong if it's contending that it gets a final say on deciding whether the per se irremediable categories apply on a particular set of facts. That decision is subject to administrative review. It was in Jackson. And the same results should pertain here. There's a last minute address. After briefing was concluded, this court issued a decision. Earlier this year, Buchanan v. Cook County Sheriff Merit Board. I submitted this as supplemental authority after the briefing was closed. Let me just address that a bit here because that wasn't part of the briefs. That case involved a sheriff's deputy terminated for allowing a female inmate to be sexually assaulted by a male inmate by placing them in the same room. The opinion acknowledges, and this goes a bit to your question, Justice Lyle, that sexual assault is extremely serious misconduct. The opinion goes on to acknowledge that even allowing the circumstances for sexual assault is extremely serious misconduct. But the court then went on to look to the record and whether the record showed that that had occurred. And the court concluded that the errors that the deputy made were not connected to the sexual assault or the potential sexual assault. And so there needs to be that connection there. And it's appropriate under the manifest way to the evidence standard, which applied there, which applies here, for the court to take that close review and see whether there is evidence. I know that the board has said that the court should defer to how it weighs the evidence, where there's contrary evidence. If we were in a ‑‑ if we had a different factual record, maybe that would be the situation we'd be in. But that's not the factual record that we have. There is not significant evidence. There is only hearsay evidence, vague evidence, double hearsay evidence, inferences against Mr. Contreras' direct denials. Of this, in the end, Mr. Contreras is here to ask for the same result that the teacher received from the court in the Jackson case, a decision reversing the board's order and reinstating Mr. Contreras with back pain benefits. The same result is appropriate here as in the Jackson case for the reasons I've discussed. If you have any questions, I'm glad to entertain them. That's the end of what I had prepared. Thank you, Mr. Brewer. All right. I'll take my leave, pending rebuttal. Mr. Doyle, whenever you're ready. May it please the Court. I'm Thomas Doyle for the Board of Education. There's a few first principles that get lost out of my colleague's argument. The first first principle is that this is here on administrative review, and that has particular meaning for the role that this Court plays. This Court treats the underlying findings of fact on administrative review as prima facie true and correct. This Court also reviews the board's decision, not the hearing officer's decision. Those cases are collected in our brief. There isn't any question about that. That's how administrative review works here. The second first principle that's important is to look at how this Court treats findings of fact on a standard of review on administrative review. The standard of review is that findings of fact are not disturbed unless they are against the manifest weight of the evidence. It is not that this Court undertakes its own weigh-in to figure out what the weight of the evidence might say if it had all been presented to this Court in the first instance. Rather, this Court looks at the record as it was developed and decides, do the findings here, are they against the manifest weight? What do we do with double hearsay in doing that assessment? Understanding that double hearsay may be admissible in administrative hearings, do we have to take that as some evidence in support of a finding that the Board made? It is some evidence. Now, the question on any hearsay issue here is double hearsay. Okay? And the question is on double hearsay. What's the underlying fact that my colleague is arguing is only supported by hearsay? What's the underlying fact? For example, he tells you that only the investigative report says that Mr. Contreras gave differential attention to girls and boys in his class. That's not correct. Principals should get testified, and that's R-5 through R-15 in the record, that he saw it happen with his own eyes. He was observing class. He saw a class where there were groups of students, and Mr. Contreras spoke only with the girls during that observation. That was a fact. Now, to your point, Your Honor, the statute permits hearsay. The Administrative Review Act does. The cases, most particularly Booker, says that Kimball is not a per se rule that says you may never have hearsay in an administrative case. Rather, in a tenured teacher dismissal case, hearsay is admissible if it is supported by other evidence. For example, in this instance, the principal's testimony. Here's another one. Now, what was said to student N.S.? That's in the investigative report. To be sure, there was hearsay evidence about it. There is also Mr. Contreras' admission. Yes, I said those things to her. There is also the principal's testimony that he saw how uncomfortable she was with him, with Mr. Contreras. She asked to be transferred away from him. That's how much Mr. Contreras' behavior bothered student N.S. We have testimony that supports the hearsay. So, Your Honor, the hearsay isn't standing on its own as the only fact, the only proof that would support a crucial fact in this case. Can I ask you about something that's not in the Court's decision? The centerpiece of the charge was a very serious allegation with regard to student S.C., right? This is a 1998 conduct, right? Right, yes. And S.C. never did not appear. Correct. Despite being under subpoena. She was under, I believe, an administrative subpoena. We asked for permission to go to the circuit court. The hearing officer would not continue the hearing so that we could go enforce the subpoena. But you went to the circuit court, right? You filed an action. I think there was an action filed. The thing couldn't get resolved in time for the hearing to get done, and we couldn't get a third day from this hearing officer. In that complaint, it was either the complaint or in your T.R.O. motion in the circuit court, quote, if plaintiff is not allowed to present the testimony of essential witness S.C., it will have no chance to meet its burden of proof in the dismissal hearing. The board will almost certainly receive an adverse decision which will require Contreras' reinstating. That's what your lawyers represented to the circuit court as to the state of your case absent the S.C. charge in S.C.'s testimony. That isn't what happened, though, Your Honor. There was hearing evidence. There was evidence that supported dismissal charges. So what we argued in the circuit court about why it was so important to try and get that witness testimony, the testimony that Mr. Contreras would not agree to a continuance on so we could all hear it, and the testimony that the hearing officer would not permit the proceeding to go forward, none of that came to light. For a second day, right, there was a month's continuance. There was a month's continuance. At the beginning of the second day, we asked, and it's in the record, we asked for a further continuance so we could enforce a trial court subpoena. And we were denied a further continuance. We were denied a third day. The question isn't what would this case look like had we been able to put in the case that would describe fully what had happened. Rather, rather, the question is what does this case look like on the evidence that did get in. There is enough here, Your Honor. Well, at the time that you filed the complaint, I think you had both days of hearing already. And what you said in your complaint was S.C. is an essential witness, and the plaintiff has no way of proving its case without her testimony. We put in the best case we could, and it was enough, Judge. Okay. It was enough. It was enough on each of the charges. Let me talk about what's written in the charges. Your point, Justice McPherson, that you asked about. The statutory argument that my colleague now makes surfaced for the first time in his reply brief. His opening brief argued this as a due process issue, and he cited a case that really had nothing to do with these circumstances called Allworm. When we distinguished Allworm and explained, well, that case really did not govern the specificity of the charges. Instead, we pointed to the Abramson case, which says that in an administrative case, the charges do not need to be as specific as a criminal indictment charges. They do not need to include every single fact that ultimately becomes part of the findings. That's what Abramson says. Your Honor, we did file charges. They appear at C-71 through C-73. Those charges, to be sure, do not include a specification that Mr. Contreras stared at the breasts of high school girls. That testimony came in. What are we supposed to do with it once it comes in? Are we supposed to pretend it didn't happen? My colleague suggests that we could have filed amended charges in the middle of the hearing. Well, if so, then what are we talking about? This is truly a no harm, no foul. We pushed in our opposition brief for some description of how that testimony and that fact was unfair to Mr. Contreras. What would he have done differently had that been included at the very beginning of the specifications in this case? Nothing. There is nothing in his arguments. There's nothing he identifies that he would have done differently. In fact, he cross-examined that student at the hearing. He had a month off, and he denied it when he testified himself on the second day of the hearing. This is truly a situation like 3111B in the Administrative Review Law says. If there is a technical defect in the underlying proceedings that does not affect substantive rights, that technical defect is not reversible error. That's what the statute says. That plainly is what it is that happened here. In these circumstances, he asks this court to go through a two-step analysis from the Beggs case. Let's take a moment and look at that. The Beggs case comes from Murfreesboro, Illinois, under Section 24-12 of the school code. That is not the section that applies to the city of Chicago. The city of Chicago has 3485, part of Article 34, which is the section of the school code that applies to Chicago public schools. 3485 is the tenure teacher dismissal statute that applies to Chicago. That statute has the irremediable per se categories that Justice Mikva referred to, the immoral, criminal, negligent, in any way causing physical or psychological harm or injury to a student, cruel. Each of those categories, and by the way, they aren't cumulative. They're each separate. If we prove that particular misconduct is immoral, that's enough. And that's what the Brown case says, cited in our brief. Brown v. Board of Education, believe it or not, that is from, I believe, 2021. In that case, the teacher swore at a student, and the teacher shoved a student. And this court said the conduct was immoral. That's all it was that the court said. The court said that's enough. Anyway, the Beggs decision doesn't even involve the statute that we're here today under. Now, you may think that that's the kind of argument only a lawyer could love. But I will tell you, the statute is important in its differences. 2412 in the Administrative Review section, 2412d-9 says that on review, the appellate court looks at both the hearing officer decision and the board's decision and tries to figure out what the truth is. That is not what 3485 says. 3485a-8 says that the board's decision is the decision that is up on Administrative Review. The hearing officer's decision is a recommendation to the board and is a non-event as far as this court is concerned when it is determining what it is reviewing. That matters because, as the cases say, whether conduct is irremediable is a question of fact. There isn't any doubt that that's a question of fact. Was conduct immoral? Question of fact. Was conduct cruel? Question of fact. The board made findings on each of those like the statute required the board to do, and this court should not disturb those findings. The limitation that the statute sets, I'm confused as I asked your colleague, negligent so much. Everybody's negligent all the time. I think there are two hoops that misconduct has to satisfy. First, it has to be irremediable per se under the way this case has been brought today. I think it has to fit into one of those categories. That's one set of questions of fact. The second set of questions of fact is, is there cause to dismiss? In other words, was the irremediable conduct so serious that it was cause to dismiss? That is also a question of fact, and those cases are collected in our brief. So there are two pieces, and there's two guardrails that govern this analysis. One, was it irremediable per se, and two, was it serious enough to justify firing someone? The cases talk about that. Ahmad talks about that. Raycek talks about that. I'm sorry, Raycek is not the one I'm thinking of. Ahmad talks about that. Conduct that is so disruptive that it is difficult for the school to function. This Court has long deferred to agencies as they make those decisions. That's the Sheriff's case that's in our brief. This Court defers to an agency when it decides, is misconduct so serious that it will interfere with the agency's ability to function? That's cause, Justice McFaul, and that's the second guardrail that goes on this. So to your point, you could say anything is cruel. You could say anything is negligent. You could say, and you could be talking about things that are truly inconsequential. If they are truly inconsequential things, they wouldn't satisfy cause to dismiss, and we wouldn't be here. Your Honor, I will tell you, this is cause to dismiss. Students who are so uncomfortable with the teacher that they ask to be transferred. Students who testify, I saw him ogling high school girls' bodies. Students who testify, he made me uncomfortable when he asked me about my boyfriend. Principals who say, I saw a student so uncomfortable that she asked to be transferred to another classroom. A principal who testifies, I saw him, when I observed his classroom, I saw him treat the girls differently than he treated the boys. The statute gives the Board the responsibility and the authority to address circumstances just like this. This Court shouldn't second guess that. The Board is here today because we made a determination that the underlying conduct was immoral. It was. We made a determination the underlying conduct was cruel. It was. There is evidence that supports that. For example, on the question of was the underlying conduct immoral, Cammy Pratt testified about the standards that apply to teacher conduct and student relationships. That's the record at R13 and R14. Student LD says that he stared at students' breasts. That's in the record at R15 to R17. Mr. Contreras himself admitted what he said to student NS about you look better than I do, holding the door, and to student LD. His admissions appear in the record at R28, R35 to R37, R30 and R36. All of that evidence is corroborated by the hearsay, which is in the record in the investigative report, E85 to 88. Principal Shapik says that a student was so uncomfortable that he asked to be transferred away. That's evidence in the record at R7. The principal also said that we regarded this kind of behavior as grooming, a very serious concern when you're running a school. That's in the record at R5. Ms. Pratt also describes how the power imbalance is so significant in a school setting, because teachers and students are not the kind of peers that might otherwise be okay to have playful, vaguely sexual banter tossed around. There is a power imbalance and there is behavioral norms. He violated them. It is immoral conduct. There was evidence in the record to support it. It is a finding of fact. This court ought not to second-guess that finding of fact. All of that same evidence goes to whether or not the underlying conduct was cruel. The board found it was cruel. That's a finding of fact. This court ought not disturb it. Did it cause, and here's a fascinating section of the statute, 3485 says, does the misconduct in any way cause psychological or physical harm or injury? This is not it has to cause blood loss, loss of limb, or a concussion. This is conduct is irremediable per se when in any way it causes harm or injury to a student. That may seem like a harsh statute to you. That's what the statute says. The board made that finding. It is supported by the evidence. There were students who were so uncomfortable by Mr. Contreras they asked out. Student LD says she was scared. That's in the record at R16 to 17. She says she avoided him and tried to get help from other instructors. That's in the record at R15 to R16. The principal witnessed student NS's discomfort as she came to him asking for a transfer. That's in the record at R5 to R7. Ms. Platt discusses why the power imbalance between teacher and student is so important when assessing protecting students from psychological harm or injury. Her testimony about that is at R13 to 14. There was evidence in the record that Mr. Contreras caused psychological harm or injury to students. There was evidence in the record that this was a big deal. This was serious. This court ought not disturb the findings from the agency level proceedings. And this court should stick to its role in administrative review. Were the underlying findings of fact against the manifest weight of the evidence? The rates at case says if there is some evidence to support it, then it is not against the manifest weight of the evidence. There was some evidence. To be sure, some of these things were disputed questions of fact. But that's why we have fact finders. Let me address one other piece. This is the notion that the hearing officer made findings this way and that way. There are a few bits that we mentioned in our brief about the hearing officer didn't quite understand what his role was here. The hearing officer didn't understand that he was making a recommendation to the board. You can tell that from his opinion. He refers to himself as the arbitrator. He says this is my final award. He awards therapeutics and attempts to retain jurisdiction over the therapeutics that he's directing because he said there was some misconduct. He just thinks it ought to be training, not his job. His job is to make a recommendation to the board. The board's job is to decide whether to take the recommendation or not. So in that sense, this court ought not to defer to the hearing officer. But you don't have to take my word for it. Look at the statute. 3485A.8 says the board's decision is what goes up on administrative review. That's the first principle that I started with. This case is administrative review. He thought he was doing a legal arbitration? I think so, Your Honor. And I think under 2412, they take a bigger role. And under 2412, if this were in Juliet or if this were in Peoria, I believe this court would be looking at what's the hearing officer say, what's the board say. This court would take perhaps a wider angle view of the record. But the statute's different. 3485 empowered the board because our school district is huge, because when the statute was passed in 1995, the legislature recognized that we have challenges in running a school district this big. And this is one of the ways the General Assembly directed us to take care of kids. They gave us irremediable per se, and they gave us limited judicial review. Your Honor, this record does not support setting aside the board's decision. The board acted in the best interest of the students. The board made its best judgment about the facts and its best judgment about the evidence. Those are questions of fact. The Begg's opinion and the two-part analysis that my colleague encourages you to go through has not been followed by this court. It wasn't followed in the Dan Williams case. It wasn't followed in the Daryl Brown case. The recent cases from this court treat the underlying facts as findings of fact of the board that are not second-guessed. For all of these reasons, Your Honor, I'm happy to answer any other questions you have. But for all of these reasons, this court should affirm the board's decision and not second-guess the fact-finding that the board made based on the evidence. Thank you, Mr. Doyle. Mr. Froth, your rebuttal. Thank you. I'm going to be respectful of the court's time and just focus on rebuttal issues. They say I don't agree with everything the opposing counsel said, but much of that I addressed before and I won't reiterate here. The board's attorney calls on you to, I would say, contradict the decisions of other panels of this appellate district that Begg's does not apply. I addressed that before, but I wanted to highlight that. I think it is clear that the two-step analysis does apply here. The administrative review standard, the board's counsel focused on the different standards applicable to Chicago teachers versus teachers who are under 2412. But I will note that the decisions in Jackson and the decisions in Kimball were decisions about Chicago teachers under the statute here. And so I think that the decision in Kimball shows that the court has the power to look to whether there is support in the record. I think the decision in Jackson shows that the court has the power to determine whether the facts that are established on the record fit within the definitions of immoral and so forth. I wanted to address a bit also about negligence. You know, I don't think that that's presented here. I can see that's an interesting question. Isn't negligence pretty broad? But if you look at what the board says on page 27 of their response, they say, well, Mr. Contreras was negligent because all the things that he did that were immoral and harmful were negligent. Right? So I don't think that this is a case which presents a teacher being disciplined solely for negligence. I guess we'll have to deal with that another day. I wanted to mention something also that falls within the issue of the must in writing. The charges here, if you look at page 2 of my appendix, page 24, 25 of my brief, talk about flirtatious comments. The principal's testimony was about attention to female students. So I do think that what the board tried to prove through the principal is different than what the board put in writing. Of course, it must put in writing what it thinks the teacher did wrong. The board said that, well, what are we supposed to do, amend the charges? What's the point? Well, yeah, I think that's what the school code says with must. The board stressed, in fact, the importance of the distinction, of the specific terms of the school code. I think that that applies here. The board talked about things that are truly inconsequential and that if something was truly inconsequential, it would not be cause for termination. So I want to focus here on, I think, the only misconduct of any sort that is supported by the evidence, which is the holding the door comment, and I do think that that is inconsequential, and I think that the hearing officer was correct. We're talking about a teacher who's been working for the board for many, many years, and to say that that could end his career, and that is all that is established by the factual record. I think that goes too far, and I think that the Jackson case shows that this Court has the authority to conclude that, okay, maybe the teacher did something that was a little bit wrong, a little suboptimal. That doesn't mean that the board gets to say, oh, this fits into this category of immoral. But that's what they're doing here. I don't think this Court should sustain that. They also addressed the hearing officer's misunderstandings. I'm not going to argue that the hearing officer didn't miss a few points about the distinction between labor arbitration and a hearing officer under school code, but I don't think there's any substantive effect here. We're not making any arguments based on what the hearing officer said. We're making our arguments based on the school code, based on the authority under the school code. The hearing officer is not a party here. That's all I have to say on rebuttal. Are there any final questions, though? Of course, I'm glad to entertain them. Thanks very much. Thanks much. Okay, that will be taken under advisement, and we'll have a disposition sometime hopefully in the near future. And with that, the Court stands in recess.